# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DUANE JOSEPH JOHNSON,

      Petitioner,

      v.

E.D. WILSON,

      Respondent.

Civil Action No. 10-178 (JEB)

## MEMORANDUM OPINION

Petitioner Duane Joseph Johnson was convicted over twenty years ago in D.C. Superior Court. The charges stemmed from a drug-deal-turned-robbery and included murder, assault, robbery, and firearms offenses. Following an unsuccessful direct appeal, Petitioner has spent the intervening decades attempting to obtain collateral relief, first from D.C. courts and now from federal. At this point, his claims have narrowed to a single, fundamental contention: his appellate (and trial) counsel, Frederick J. Sullivan — who subsequently became a Superior Court Magistrate Judge and has now retired — was ineffective.

U.S. Magistrate Judge G. Michael Harvey, to whom the case was referred, has considered Johnson's claims in a comprehensive Report and recommends that his Petition be denied. See ECF No. 115 (Report and Recommendation). Although Johnson now raises several objections to that Report, the Court agrees with Judge Harvey's careful analysis. It will thus adopt the Report and Recommendation in full and grant judgment to Respondent.

# I.     Background

## A.     Conviction and Direct Appeal

The full factual background of this case is set out in detail in the 68-page Report.  To recap briefly here, in 1995, Petitioner, who was represented by Judge Sullivan, was convicted in D.C. Superior Court of murder, assault, robbery, and firearms offenses arising from events in the early morning of April 26, 1994.  See R&R at 1–2.

The Government's evidence at trial demonstrated how the murders resulted from an attempted robbery of drug proceeds.  Sharon Nash testified that she, Keith Nash, Victor Williams, and Latina Gary went out in Keith Nash's car to buy cocaine.  Id.  Having made their purchase, they were getting ready to leave when Petitioner, accompanied by Damitra Rowell, ran up to them and asked for a ride.  Id. at 3.  After Johnson and Rowell entered the car, Petitioner directed the driver to a dead end and told Keith Nash to turn off the engine.  Id.  Johnson then got out of the car and stood at its rear left side.  Id.  Sharon Nash saw him point a gun at Keith Nash's head and demand the money the group had used to buy drugs.  Id.  Informed that the money had already been spent, Johnson fired three shots, two of which fatally struck Keith Nash and one of which wounded Sharon Nash.  Id.

The Government's remaining three eyewitnesses — Gary, Rowell, and Williams — largely corroborated Sharon Nash's description of the evening up to the purchase of the drugs and the agreement to give Petitioner and Rowell a ride.  Id. at 3–4.  Their accounts diverged slightly as to the shooting and its aftermath.  Rowell testified that the day after the shooting, Petitioner approached her, "gave [her] a story to tell" — although she never specified what that story was — and threatened to kill her if she did not comply.  Id. at 5.  Williams testified that, when Petitioner pulled out the gun, he threatened to kill everyone in the car, and, after musing

about whom to kill first, shot Keith Nash in the head and then aimed the gun at the backseat. Id. Williams struggled with Petitioner, who then fled. Id. Gary also testified to Johnson's struggle with Williams and further explained that, after Petitioner fled, Rowell followed, shouting at him. Id. at 6.

A medical examiner offered testimony corroborating the Government's version of events. He testified that Keith Nash was killed from a close-range shot that struck the left rear of his neck and exited through his lower cheek. Id. at 7. A second bullet struck near the first but did not exit. Id. Sharon Nash was wounded by a shot to the left side of her abdomen. Id. Those three wounds are consistent with the theory that both were sitting in the front seat when they were shot by a person standing at the left rear side of the car. Id.

Johnson was the only defense witness. Id. He testified that he was selling drugs when he was approached by Williams, who discussed the purchase of some cocaine. Id. When Williams said he had a customer for Johnson around the corner, they went to Keith Nash's car. Id. at 8. Johnson asked Rowell to accompany him because he was feeling uncomfortable about the transaction. Id. After they all got into the car, Williams directed Keith Nash into the alley. Id. When the car stopped, Williams pulled a gun on Petitioner and demanded drugs and money. Id. The two struggled for the gun inside the car, and during the struggle, it fired several times. Id. Eventually Johnson got free and fled the car, with Williams shooting after him. Id.

On January 19, 1995, a D.C. Superior Court jury found Petitioner guilty of first-degree felony murder while armed, second-degree murder while armed, assault with intent to kill while armed, assault with a deadly weapon, attempt to commit robbery while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license. Id. at 9.

Cumulatively, Johnson was sentenced to an indeterminate term of imprisonment of 77 years to life.  Id.

On February 12, 1996, he appealed his conviction and sentence to the D.C. Court of Appeals.  Id.  Judge Sullivan again represented him.  Id.  The Court of Appeals held that Johnson's appeal lacked merit but, as is typical in such circumstances, remanded the case for re-sentencing because the second-degree murder and attempted-robbery convictions merged with the felony-murder conviction.  Id. at 9–10.  Johnson was then resentenced to 46 years to life.  Id. at 10.

B.      Collateral Review

Petitioner's collateral-review efforts have been lengthy.  In brief, after his unsuccessful direct appeal, Johnson filed letters in D.C. Superior Court asserting ineffective assistance of trial counsel.  Id.  Following an evidentiary hearing before Judge Russell Canan, Johnson's motion was denied.  Id. at 11.  He appealed that decision as well, but the D.C. Court of Appeals affirmed in a five-page Memorandum Opinion and Judgment on August 17, 2001.  See Johnson v. United States, No. 99-CO-978 (D.C. Aug. 17, 2001) (attached to this Opinion as Appendix A).  He filed a motion in late 2005 again alleging ineffective assistance at trial, and then in early 2006 he filed another motion alleging Brady violations and ineffective assistance of both trial and appellate counsel.  Id. at 12.

While these motions were pending, Petitioner discovered that Judge Sullivan had previously represented Williams in a criminal trial in 1985.  Id. at 12–13 & n.8.  In April 2007, he thus filed another motion in Superior Court to amend his 2006 motion based on his counsel's alleged conflict of interest.  Id. at 13.  While the conflict claim was pending in Superior Court, Johnson also filed in the D.C. Court of Appeals, seeking relief for ineffective assistance of

appellate counsel based on the conflict during the direct appeal.  Id. at 14.  The Court of Appeals denied Johnson's motion to recall the mandate "without prejudice to the trial court's consideration of the alleged conflict of interest of [Petitioner's] trial counsel (who was also appellate counsel)."  Id. at 15 (citation omitted).

Back in Superior Court, Judge Canan denied Johnson's motions in a thorough and detailed 34-page opinion.  See ECF No. 63-10 (Judge Canan Opinion).  Treating extensively many of the specific claims Petitioner now reiterates here, he concluded that Judge Sullivan's representation had been effective and not hampered by conflict.  Id. at 23–26.  Judge Canan also found the Brady claims unpersuasive.  Id. at 31.  Petitioner subsequently filed four additional motions between October 2008 and June 2010 in Superior Court and the D.C. Court of Appeals.  See R&R at 17–18.  All four were denied.  Id.

Hoping for better luck in a change of venue, on January 29, 2010, Johnson filed his first petition in federal court, raising a variety of claims.  Id. at 19.  All except the claim for ineffective assistance of appellate counsel (IAAC) were dismissed because the petition was not the proper method of redress.  Id.  Petitioner therefore in February 2013 filed the operative Petition alleging IAAC, which was originally assigned to Judge Amy Berman Jackson.  Id. at 20.  Once counsel appeared on Petitioner's behalf in February 2014, Judge Jackson referred the matter to Judge Harvey for a Report and Recommendation.  Id. at 22.

Judge Harvey, before penning a remarkably thorough 68-page Report, held an evidentiary hearing, at which he took testimony from Judge Sullivan, CJA Investigator Brendan Andrew Wells, and Petitioner.  Id. at 22–25.  Judge Harvey then carefully analyzed the testimony and made a series of credibility findings.  He determined that Judge Sullivan was credible, "candid[,] and non-evasive," and that he was not ineffective as appellate counsel.  Id. at 1, 36.

On August 14, 2018, the case was randomly transferred from Judge Jackson to this Court, which

now issues its Opinion.

## II.      Legal Standard

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered her

recommended disposition, a party may file specific written objections.  The district court "must

determine *de novo* any part of the magistrate judge's disposition that has been properly objected

to."  Fed. R. Civ. P. 72(b)(3); see, e.g., Winston & Strawn LLP v. FDIC, 841 F. Supp. 2d 225,

228 (D.D.C. 2012) (stating that court must conduct *de novo* review of objections to magistrate

judge's report and recommendation).  The district court may then "accept, reject, or modify the

recommended disposition."  Fed. R. Civ. P. 72(b)(3).

## III.     Analysis

Petitioner raises three sets of objections to the Report, targeting Section III.A on

Antiterrorism and Effective Death Penalty Act deference, Section III.C on the alleged conflict of

appellate counsel, and Section III.D on other ineffective-assistance-of-appellate-counsel claims.

The Court addresses each in turn.

### A.      Section III.A: AEDPA Deference

As AEDPA governs federal courts' habeas jurisdiction over state-court decisions, there

are two questions of AEDPA deference here — legal and factual — which the Court will take in

order.  Federal courts addressing exhausted habeas claims must generally defer to a state court's

legal conclusions.  See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 101–03 (2011).

Petitioner nevertheless contends that no deference is appropriate in his case because D.C. courts

did not pass on his IAAC claims; as a result, he believes that the Report erred to the extent it

"suggests that deference is owed to [D.C. courts'] prior legal conclusions."  ECF No. 120

(Petitioner's Objections) at 11. Judge Harvey, however, neither concluded that such deference was owed, nor at any point did he defer to state-court conclusions. This is because he determined — and this Court agrees — that it was unnecessary to resolve the appropriate scope of deference where Petitioner could not prevail even if no deference were given. Id. at 32–33. Petitioner elaborates that, even if the R&R "did not arrive at a firm conclusion," this Court should find error because "Judge Harvey appears to have partially relied on D.C. courts' prior decisions" on pages 51 and 53 of the Report. Id. at 11 n.8. Although the Report recites those rulings, it does not rely on them. See R&R at 51, 53. As no legal deference appears in the Report, the Court need not further discuss this point.

As to deference to factual conclusions, conversely, Judge Harvey concluded — and this Court agrees — that "factual findings of the D.C. Courts are entitled to deference," as mandated by 28 U.S.C. § 2254(e)(1), which "stat[es] that 'determination of a factual issue made by a State court shall be presumed to be correct.'" Id. at 31 n.15. Johnson asserts that "presumption may be rebutted with 'clear and convincing evidence.'" Pet. Obj. at 12. Petitioner, however, does not point to such evidence, nor does he elaborate on his assertion that the D.C. courts' "determinations were made on materially incomplete records and were grounded in incorrect legal principles, and thus are not entitled to AEDPA's presumption of correctness." Id. Absent a reasoned explanation of why no deference is owed, this Court is compelled to conclude that AEDPA mandates deference to factual findings.

B.      Section III.C: Conflict Claims

Petitioner next raises a series of challenges to Section III.C of the Report, which addresses his IAAC claim based on an alleged conflict of interest. Specifically, Johnson objects to Judge Harvey's findings that Judge Sullivan was credible; that no adverse inference was

appropriate based on Judge Sullivan's treatment of Petitioner's case files; and that his claims had to satisfy the <u>Strickland</u> standard, as opposed to the more lenient <u>Cuyler</u> standard, to warrant relief. <u>See</u> Pet. Obj. at 13, 16, 20. If Judge Harvey had decided these questions differently, that could have led to a different outcome on the conflict issue.

        1.    *Credibility*

Beginning with the first of these, Johnson furnishes an array of putative inconsistencies in Judge Sullivan's testimony. <u>Id.</u> at 13–16. Judge Harvey took that testimony at an evidentiary hearing, and, having done so, determined that Judge Sullivan's "demeanor was open and his answers . . . candid and non-evasive." R&R at 36. Johnson does not challenge that finding. Each of the challenges he does raise to Judge Sullivan's credibility based on the substance of his testimony, moreover, was squarely and persuasively addressed by Judge Harvey. Upon its own examination of the transcript, the Court agrees and has little to add.

Petitioner first argues that Judge Sullivan was inconsistent in his explanations for failing to recognize that he had previously represented one of the Government's witnesses — Victor Williams — in a prior criminal trial, alternately citing a misspelling in his database of clients and asserting that he did not run conflict checks through the database or otherwise. <u>See</u> Pet. Obj. at 13–14. Judge Harvey carefully reviewed and extensively quoted Judge Sullivan's relevant statements in D.C. Superior Court and in the response to a D.C. Bar Complaint filed by Petitioner and came to the conclusion — shared by this Court — that Judge Sullivan had not been inconsistent. <u>See</u> R&R at 36–38. In neither case did he assert that the misspelling caused him to overlook his prior representation at Williams; he merely stated that the name was misspelled. At the evidentiary hearing, Judge Sullivan said directly that the misspelling "really

had nothing to do with [not realizing the prior representation,]" and it was that neither of them "recognize[d]" each other at trial.  See ECF No. 102 (Transcript) at 89:2-5.

Johnson also maintains that Judge Sullivan was inconsistent in describing the extent to which he investigated Williams before trial and that a reasonable pretrial investigation would have uncovered the prior Williams representation.  See Pet. Obj. at 14, 15–16.  Again, Petitioner misses the mark.  As the Report explains, Judge Sullivan was consistent in explaining he would have tried to find and interview government witnesses for trial, although not for the appeal.  See R&R at 38–39.  Petitioner's objection centers on a statement that before trial Judge Sullivan "did nothing to investigate Victor Williams's criminal history . . . because he didn't feel it was necessary."  Pet. Obj. at 14 (internal quotations and citation omitted).  There, Johnson is citing to a portion of Judge Sullivan's testimony where he explains that he would not necessarily have investigated Williams's past convictions, see Tr. at 55:12, a statement not inconsistent with his explanation that he tried to "find" and "get a statement from [Williams]" as part of a more general pretrial investigation.  Id. at 52:6.

Nor was Judge Sullivan's account of his pretrial investigative process generally inconsistent.  Contrary to Petitioner's representation, Judge Sullivan did not indicate that "he could not think of a situation in which he would not have conducted the required research with respect to a government witness."  Pet. Obj. at 16 (citing Tr. at 44:18-23).  Rather, he testified that "there were" circumstances in which he would not run a government witness in the database, "but what they were, [he did not] know."  Tr. 44:20-21.  His testimony, read fairly, explains his general practices but acknowledges some uncertainty about specifics and exceptions given the amount of time that has now passed.  Even if Williams had been run in the database in this case, as Judge Harvey explained in the Report, see R&R at 39–40, that research would not necessarily

have uncovered the prior representation because of the way the case database was structured and the amount of time required to obtain case jackets.  <u>See</u> ECF No. 103 (Evidentiary Hearing Continued Transcript) at 51:1-18, 54:3-25, 55–57.

Finally, Petitioner urges that Judge Sullivan was not consistent in his description of his file-retention policies.  <u>See</u> Pet. Obj. at 15 & n.10.  The only putative inconsistency that Johnson highlights is that between Judge Sullivan's testimony that he generally kept Bar complaints as part of a "complete file"; that he discarded files from before his judgeship when he joined the bench in September 2005; but that he nevertheless had disposed of Petitioner's April 13, 2007, complaint to Bar Counsel.  <u>Id.</u> at 15 n.10.  Even assuming Judge Sullivan had not testified clearly as to his practice with complaints after he joined the bench, he was clear in May 2007, in a letter replying to Bar Counsel, that he could not respond fully to the complaint without seeing Johnson's file, which he had, years earlier, returned to him.  <u>See</u> ECF No. 78-24 (Letter to Bar Counsel) at 1; <u>see also</u> R&R at 41.  That returning a file to a client might have caused Judge Sullivan to depart from his file-retention policies in one instance does not cast doubt on the credibility of his testimony generally or even as to the essentials of his retention policy.

2.      *Adverse Inference*

Petitioner also objects to the Report's determination that no adverse evidentiary inference was warranted based on Judge Sullivan's "improper disposal of Petitioner's client files."  Pet. Obj. at 16.  As an initial matter, Judge Harvey found that Judge Sullivan was credible in testifying that he never disposed of Johnson's file but rather returned it to him.  <u>See</u> R&R at 41. Examining the transcript and other evidence, this Court agrees.  <u>See</u> Letter to Bar Counsel at 1; Tr. at 19, 30.  As a result, although the Court appreciates Petitioner's difficulty in proving a negative, <u>see</u> Pet. Obj. at 18, it has no basis to doubt the determination that the file was returned

to Johnson.  To the extent Johnson relies, as he did before Judge Harvey, on D.C. Bar Legal

Ethics Opinion 206 to show that Judge Sullivan had an obligation to retain his files, Judge

Sullivan discharged any such obligation by returning the files to Petitioner.  See D.C. Bar Legal

Ethics Opinion 206 at 339 (1989).

Even if the Court were not to credit that determination, moreover, it finds that Petitioner

has not established at least two of the three requirements for adverse inference.  As Judge Harvey

noted, "[T]o merit imposition of an evidentiary sanction, the proponent must establish" three

things: an obligation to preserve the evidence; a culpable state of mind in the destruction or loss

of the evidence; and the relevance of the destroyed or altered evidence to the claims or defenses

of the party seeking it.  See R&R at 40 (citing Ashraf-Hassan v. Embassy of France in the United

States, 130 F. Supp. 3d 337, 340 (D.D.C. 2015)).

Johnson has not adduced any evidence of a culpable state of mind.  Petitioner relies on

Elliott v. Acosta, 291 F. Supp. 3d 50 (D.D.C. 2018), for the proposition that he need not show

bad faith, but only that Judge Sullivan's actions were "deliberate."  ECF No. 122 (Pet. Reply) at

12.  Elliott, in fact, holds that a claimant need not show purposefulness and that negligence will

suffice.  See 291 F. Supp. 3d at 68.  In other words, the case does not stand for the proposition

that any non-accidental disposal is culpable.  And here, Johnson has not adduced any facts to

show that any disposal was either purposeful or negligent.

Finally, Johnson has not shown that a "reasonable factfinder could conclude" that the

files would have supported his claims here.  See Ashraf-Hassan, 130 F. Supp. 3d at 340.

Petitioner insists that "[w]hat Judge Sullivan's records could prove about what Judge Sullivan

knew about his representation of Victor Williams and Williams's prior arrest records, would

have been critical to Petitioner's habeas claims."  Pet. Obj. at 19.  What is not clear —

particularly given Judge Sullivan's repeated and credible testimony that had he recognized Williams at the time, he would have notified all parties and the court, see Tr. 76:24–25, 77:1–9, 77:25, 89:2–8, 94:1–15 — is what document or set of notes Johnson believes would prove useful.

3. Cuyler *Standard*

Next, Petitioner cites error in Judge Harvey's decision not to accord him relief for his ineffective-assistance claims under the Cuyler standard — *i.e.*, if a counsel's conflict of interest adversely affected her performance, prejudice is presumed. See Cuyler v. Sullivan, 446 U.S. 335 (1980). This standard is satisfied where "appellate counsel labored under an actual conflict of interest that adversely affected his performance." R&R at 43 (citing U.S. v. Gantt, 140 F.3d 249, 254 (D.C. Cir. 1998)). "The *sine qua non* of such a claim is that the attorney knew of the conflict during the challenged representation." Id. (citing U.S. v. Berkeley, 567 F.3d 703, 709 (D.C. Cir. 2009)). As Judge Harvey concluded, to the extent "Judge Sullivan's testimony concerning his failure to recall his representation of . . . Williams [is] credible[,] . . . Petitioner's conflict of interest claims under Cuyler . . . fail." Id.

Petitioner does not challenge that reasoning beyond reasserting his objections to the credibility findings addressed above. Instead, he principally presses an alternate theory — namely, that Judge Sullivan could be said to have been laboring under an actual conflict to the extent he had a "personal interest in avoiding ineffective assistance of trial counsel claims." Pet. Obj. at 20. In other words, since Judge Sullivan himself was the trial counsel, he did not want to press the theory on appeal that he had been ineffective at trial.

Here, the Court departs slightly from Judge Harvey's reasoning but reaches the same result — *i.e.*, that Johnson cannot prevail under the Cuyler standard pursuant to this theory

either.  The Report concludes that the Circuit has foreclosed this argument because it has "rejected . . . 'attempts to force their ineffective assistance claims into the actual conflict of interest framework . . . and thereby supplant the strict Strickland standard with the far more lenient Cuyler test.'"  R&R at 44 n.27 (quoting United States v. Bruce, 89 F.3d 886, 893 (D.C. Cir. 1996)).  The Circuit did clarify, though, that "[i]f an attorney fails to make a legitimate argument because of the attorney's conflicting interest, . . . then the Cuyler standard has been met."  Bruce, 89 F.3d at 896.  It subsequently elaborated that counsel's interest in avoiding an advice-of-counsel defense where raising that defense would reveal counsel's inaccurate legal advice could qualify as a conflict under Cuyler.  See U.S. v. Taylor, 139 F.3d 924, 932 (D.C. Cir. 1998).  The court cautioned, however, that an attorney must actually "be forced to make a choice advancing his own interest at the expense of his client's," and that "a hypothetical conflict having no effect on . . . counsel's representation [is not] enough to come within Cuyler's reach."  Id. at 930–31 (citations omitted).

The Court finds that Petitioner has raised only such a hypothetical conflict.  As an initial matter, the Court is given some pause by the attempt to bootstrap the ineffective-assistance-of-trial-counsel claim into a proceeding where the Court lacks jurisdiction to adjudicate it.  Even assuming this Court can address the substance of the claim, it lacks merit for two independent reasons.  First, it is plain that Judge Sullivan at the time of appeal believed himself to have been effective trial counsel.  See Tr. at 103:15–25, 104:1–24, 105:5–25, 106:1–20, 107:21–25, 108:1–21, 109:23–5; 110:1–16; Continued Tr. at 19:10–16.  Such belief defeats any Cuyler claim because, for Cuyler to apply, an attorney must be aware of his conflict during the challenged representation.  See Berkeley, 567 F.3d at 709.

Second, where, as here, the Court finds there was no colorable ineffective-assistance-of-trial-counsel claim, any conflict would be "hypothetical," as counsel was not "forced to make a choice advancing his own interest at the expense of his client's." <u>Taylor</u>, 139 F.3d at 930–31. Having reviewed the D.C. Court of Appeals's analysis of the ineffective-assistance-of-trial-counsel arguments, the Court agrees with — without deferring to — its conclusion that Judge Sullivan was an effective trial counsel. See <u>Johnson</u>, No. 99-CO-978. Although Petitioner now maintains that Judge Sullivan was ineffective because he did not reasonably research and prepare or develop a defense theory of the evidence, <u>see</u> Pet. Obj. at 21, the Superior Court, after a hearing at which both Petitioner and Judge Sullivan testified, found that "counsel understood [Petitioner's] version of events, . . . [he] reviewed the testimony, . . . [and he] sat down on more than one occasion to go over extensively what he perceived to be [Petitioner's] version of this particular event." <u>Johnson</u>, No. 99-CO-978 at 3 (internal quotation marks and citation omitted). This Court defers to those factual findings and independently concludes that Judge Sullivan's preparation and performance were reasonable. As to Petitioner's final argument — that Judge Sullivan was ineffective in failing to raise "numerous problems with the discovery at trial," Pet. Obj. at 21 — the Court assumes he is referring to the <u>Brady</u> issues addressed in the next section. In short, however, they likewise provide no basis on which to conclude Judge Sullivan was ineffective at trial.

      C.      <u>Section III.D: Other IAAC Claims</u>

Petitioner last argues that Section III.D of the Report — which addresses his ineffectiveness claims unrelated to conflict — suffers from essentially two legal errors, both having to do with his contention that Judge Sullivan was ineffective for failing to raise a variety of <u>Brady</u> claims. Judge Harvey found that Judge Sullivan could have been ineffective on that

basis only if the Brady claims "would likely have succeeded on appeal," R&R at 50 (citation omitted), and that none of the claims met that standard. Id. at 55–56. Taking Petitioner's two objections in turn, the Court agrees with the Report's analysis.

1. *Cumulative Effect*

Johnson first contends that the Report erred because it did not address the cumulative effect of the Brady claims, but rather assessed them in isolation. See Pet. Obj. at 22. Petitioner is correct that courts must cumulatively evaluate the materiality of wrongfully withheld evidence. See Wearry v. Cain, 136 S. Ct. 1002, 1007 (2016) (citing Kyles v. Whitney, 514 U.S. 419, 441 (1995)). Evidence is "material" if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." R&R at 49 (quoting Banks v. Dretke, 540 U.S. 668, 698–99 (2004)). The Report, however, does invoke those standards before concluding that "Petitioner fails here because he has not established a Brady violation in the first instance." Id. at 50.

Even assuming the Report could have more explicitly assessed the cumulative effect of the claims, it would not have made a difference because two of the three pieces of evidence Petitioner points to were not withheld, and the third is not material. Specifically, in his Objections, Petitioner highlights that: (1) Gary sought out Rowell to beat her before Rowell talked to the police; (2) Gary surrendered Keith Nash's gun to the police after the shooting; and (3) Williams's 1994 arrest for armed robbery was not papered by prosecutors. See Pet. Obj. at 24. The first two facts were disclosed at trial, see R&R at 51, and Petitioner has not even attempted to establish, as he must to succeed on this claim, prejudice from disclosure at — rather than preceding — trial. Id. at 51–52 (citing United States v. Clarke, 767 F. Supp. 12, 40–41 (D.D.C. 2011)). As to Williams's 1994 arrest, which Petitioner contends "would have been

admissible to show that Williams was biased or had motivation to curry favor with the [G]overnment," Pet. Obj. at 24, there is a closer question. Johnson, however, never explains why the particular circumstances of the Government's decision not to prosecute an earlier case would have led to bias here. More importantly, there were three other eyewitnesses to the murder with substantially similar testimony and corroborating forensics such that the Court cannot conclude that the admission of the Williams evidence would have undermined confidence in the verdict. See also R&R at 55–56. Even accumulated, then, this evidence would not give the Court pause to revisit the jury's decision.

    2.    Brady *Standard*

Next, and relatedly, Johnson contends that the Report applied the incorrect standard to his Brady claims, invoking sufficiency of the evidence to support his conviction rather than sufficiency of the withheld evidence to undermine confidence in the verdict, and that, more specifically, Judge Harvey incorrectly analyzed the 1994 arrest as though it had to be outcome determinative. See Pet. Obj. at 25–26. As should be clear from the previous analysis, the first argument is curious, as the Report did employ the standard that Petitioner maintains is proper. See R&R at 49–50. Likewise, as to the treatment of the arrest, Judge Harvey never concluded it had to be outcome determinative for the claim to succeed. Rather, he determined — and this Court cannot disagree — that because there was a great deal of corroborating evidence, the introduction of the arrest would not have undermined confidence in the verdict. To support that conclusion, in part, he cites to United States v. Lampkin, 159 F.3d 607 (D.C. Cir. 1998), to which Petitioner objects because Lampkin is not a Brady case. See Pet. Obj. at 26. That may be true, but Petitioner himself relied upon Lampkin, see R&R at 55, and the case nevertheless stands for the proposition that when evidence related to a no-papered arrest is wrongfully

withheld, that fact does not "undermine[] confidence in the conviction" where that witness's testimony was supported by ample other evidence.  See Lampkin, 159 F.3d at 612, 613 (quoting United States v. Yunis, 924 F.2d 1086, 1096 (D.C. Cir. 1991)).

**IV.     Conclusion**

For the foregoing reasons, pursuant to Local Civil Rule 72.3(c), the Court will adopt Magistrate Judge Harvey's April 11, 2018, Report and dismiss the case.  A separate Order consistent with this Opinion will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  October 25, 2018

# APPENDIX A

L

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 99-CO-978

DUANE J. JOHNSON, APPELLANT,

v.                F4696-94

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia,
Criminal Division

(Hon. Russell F. Canan, Trial Judge)

(Argued April 10, 2001)                Decided        August 17, 2001)

Before: FARRELL and RUIZ, *Associate Judges*, and MACK, *Senior Judge*.

## MEMORANDUM OPINION AND JUDGMENT

Duane Johnson appeals from the trial court's denial, after a hearing, of his motion for a new trial in which he alleged ineffective assistance of trial counsel. He asserts that counsel failed to adequately prepare, and as a result, established a contradiction between his testimony and the physical evidence. He also argues that counsel should have developed other evidence that would have supported the defense's theory of the case. We affirm.

### I.

According to the prosecution, appellant was sitting in a car with Keith Nash ("decedent"), Sharon Nash ("Sharon"), Victor Williams, and two others (Latina Gary and Damitra Rowel) when appellant attempted to rob the group. Appellant was either halfway outside the car or already outside and leaning back into the driver's side of the car, when he fired three gunshots and fled. The decedent and Sharon suffered wounds to the left side of their bodies. Appellant contends, to the contrary, that he was the intended victim of a robbery attempt by Williams and his cohorts. He asserts that Williams drew a gun, a struggle ensued, and the gun went off several times. Appellant was convicted of felony murder,[1] assault with intent to kill while armed,[2] assault with a dangerous

---

[1] D.C. Code § 22-2401 (1996 & Supp. 2000); D.C. Code § 22-3202 (1996). Appellant was also convicted of the attempt to commit robbery while armed, in violation of D.C. Code §§ 22-2902, -3202 (1996), and second degree murder while armed, in violation of D.C. Code §§ 22-2403, -3202 (1996), both of which merged with his felony murder conviction.

[2] D.C. Code §§ 22-501, -3202 (1996).

weapon,[3] possession of a firearm during a crime of violence,[4] and carrying a pistol without a license.[5] Appellant's motion for a new trial under D.C. Code § 23-110 (1996) followed. The trial court held a hearing on the motion and concluded that appellant had failed to demonstrate that counsel was deficient or that appellant was prejudiced by any deficient performance. This appeal followed.

## II.

Appellant asserts that his counsel's performance was ineffective because counsel was inadequately prepared and failed to develop additional evidence at trial. In addition, appellant contends for the first time on appeal that counsel's performance was deficient because he made reference to two witnesses during opening argument, but then failed to call either of them to the witness stand.

For appellant to succeed on his claim of ineffective assistance of counsel, he must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *White v. United States*, 484 A.2d 553, 558 (D.C. 1984). When reviewing the performance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland, supra*, 466 U.S. at 689. The trial court's determination as to whether counsel was ineffective presents a mixed question of law and fact for review. *Byrd v. United States*, 614 A.2d 25, 30 (D.C. 1992). "Where, as here, a defendant's claims have been the subject of a hearing, this court must defer to the trial court's credibility determinations respecting witnesses who testify at that hearing, and the trial court's factual findings will not be disturbed unless they lack support in the record." *Johnson v. United States*, 616 A.2d 1216, 1234 (D.C. 1992), *cert. denied*, 507 U.S. 996 (1993).

Appellant's first argument on appeal is that counsel failed to discuss with him the importance of testifying to the relative positions of the decedent and Sharon in the car.[6] As a result, the argument goes, his "testimony came out in a way that was contradictory to the physical evidence." Appellant faults his counsel for inadequately preparing for trial and for failing to elicit testimony regarding the position of the victims.

---

[3] D.C. Code § 22-502 (1996).

[4] D.C. Code § 22-3204 (b) (1996).

[5] D.C. Code § 22-3204 (a) (1996).

[6] The positions of the victims were relevant to reconciling appellant's version of the events with the left entry wounds sustained by Sharon and the decedent. It was the government's contention at trial and at the motion hearing that Sharon was seated in the front passenger seat next to the decedent. At the motion hearing, appellant testified that Sharon was in the back seat (not the front) on her knees facing the rear of the car between appellant and Williams, and the decedent was turning around in the driver's seat to observe the struggle.

At the hearing on appellant's 23-110 motion, the trial court heard the testimony of appellant and counsel on the matter. The court found that over the course of four or five pre-trial meetings between the two, counsel "understood [appellant's] version of events, . . . [he] reviewed the testimony, . . . [and he] sat down on more than one occasion to go over extensively what he perceived to be [appellant's] version of this particular event." These findings by the court are supported by the record and, therefore, will not be disturbed on appeal. *See Johnson, supra,* 616 A.2d at 1234.

As to the question of whether counsel was constitutionally ineffective for failing to elicit testimony from appellant concerning the positions of the decedent and Sharon during the shooting, counsel explained that appellant never told him during their discussions that he had seen, or even was in a position to have seen, the decedent turning around while he struggled with Williams. Counsel explained that it would have been incredible for appellant to testify that he had time to observe the decedent turning around. Rather, the credible theory was that a great commotion occurred in the car with people struggling, running away, and turning around. After hearing the arguments and testimony, the court found that counsel

> made a strategic judgment . . . not to recreate or even to attempt to recreate the crime scene vis-a-vis the wounds and trajectory, but to set forth a notion that in the overall . . . confusion [] the decedent and [Sharon] were shot . . . . [T]his Court has not heard any testimony in these proceedings that would warrant the second guessing of that strategy.

The court's conclusion is bolstered by the fact that through the statements of counsel the jury was made aware of the positions of the decedent and Sharon. In this regard, we agree with the court that appellant has failed to overcome the "strong presumption" that counsel's conduct was within the "wide range of reasonable professional assistance." *Strickland, supra,* 466 U.S. at 689; *see also Sothern v. United* States, 756 A.2d 934, 937 (D.C. 2000); *Curry v. United States,* 498 A.2d 534, 540 (D.C. 1985).

Appellant also contends that counsel should have introduced additional evidence to bolster the defense's theory of the case. Specifically, appellant argues that "a defense could have consisted of . . . the affirmative ground of self-defense" and, therefore, counsel should have introduced into evidence the decedent's prior conviction for armed robbery.[7]

---

[7] Appellant also argues that counsel was deficient because he failed to establish that: (1) Williams and his cohorts were the robbers and appellant was the intended victim; (2) the gun claimed to have been fired by Williams was fully loaded when it was turned over to the police; (3) Williams and Gary were boyfriend and girlfriend thereby establishing Gary's bias; (4) the shell casings recovered from the scene did not match the decedent's weapon; and (5) Gary had a fight with Rowel. We have reviewed these additional arguments and agree with the court that they are without merit.

As the government points out in its brief, however, there is a "fundamental flaw in this argument." The theory advanced by the defense at trial was that Williams was the aggressor, not the decedent, and that the shooting was accidental. During the § 23-110 hearing, the court found that there was nothing in the record that

> did not coincide with the overall tactical decision to present the defense regarding the struggle for the gun with Mr. Williams in such a fashion as to make [the decedent's] death accidental . . . and [counsel] made it clear that it was not self-defense vis-a-vis [the decedent,] and even if it was self-defense vis-a-vis Mr. Williams[,] clearly [the decedent] was a bystander to this . . . struggle.

Moreover, the court thought that it was unlikely the fifteen year-old prior conviction of the decedent would have been admissible at trial. Therefore, we agree with the conclusion of the court that counsel cannot be faulted for the tactical decision not to introduce the decedent's prior conviction. *See Robinson v. United States*, 756 A.2d 448, 458 (D.C. 2000) (decision not to impeach witness with particular evidence is a "tactical decision" that generally does not result in finding of ineffective assistance of counsel).

Finally, appellant asserts that counsel was constitutionally ineffective by mentioning two witnesses during opening argument and then failing to call those two witnesses during trial.[8] During his opening argument, counsel explained that he would call two witnesses who would testify that they heard gunshots, followed by some argument, and then more shots. Though the two witnesses were never called to the stand, their testimony would have been duplicative of the testimony of Rowel, Williams, and Gary. It was not unreasonable, therefore, for counsel to decide not call the two witnesses during trial.[9] *See Williams v. United States*, 421 A.2d 19, 26 (D.C. 1980). Accordingly, we reject appellant's argument.

### III.

For the reasons stated above we conclude that the court did not err by denying appellant's

---

[8] Appellant raises this argument for the first time on appeal and, therefore, we review his claim on the basis of the trial court record alone. *See Smith v. United States*, 686 A.2d 537, 550 (D.C. 1996).

[9] The cases cited by appellant in opposition to this conclusion are inapt. *Dobson v. United States*, 711 A.2d 78, 83 (D.C. 1998), involved an alibi defense in an "especially . . . close case." In *Harris v. Reed*, 894 F.2d 871, 873-74 (7th Cir. 1990), the opening argument asserted that one witness would play "quite prominently in the trial" and no witnesses were ever called to the stand. Finally, in *Anderson v. Butler*, 858 F.2d 16, 18-19 (1st Cir. 1988), the opening promise "went to the vitals of [the] defendant's defense, and no juror . . . would ignore it." Here, the testimony was cumulative, was not vital to the defense, and would not have a significant effect on the jury's evaluation of the case.

motion for a new trial based on the ineffective assistance of counsel.  Accordingly, it is

ORDERED and ADJUDGED that the judgment on appeal be, and hereby is, affirmed.

FOR THE COURT:

JOY A. CHAPPER
Acting Clerk of the Court

Copies to:

Clerk, Superior Court

Hon. Russell F. Canan

Richard T. Moore, Esq.
P.O. Box 76365
Washington, DC   20013

John R. Fisher, Esquire
Assistant United States Attorney